Brown v. City of Houston Is the appellant ready to proceed? Is that Ms. Edwards? All right. And the appellees are City of Houston and Harris County, Martin and then Mr. Hopkins. All right, you may proceed. Good morning, and may it please the court. Catherine Edwards for the plaintiff appellant Alfred Dwayne Brown. Bring any action. This appeal is about the application of those three words from the Tim Cole Act. They are crystal clear. Bring an action means to file suit. What the defendants are asking this court to do is rewrite the Tim Cole Act. What we're asking the court to do is apply the plain meaning of that statutory language to the facts of this case. And if you do that, you must reverse. There is no case that has these facts. Is that right? That's right, Your Honor. There's no case out of the Texas Supreme Court or any court that I'm aware of that's addressed this exact issue. So it's an issue of first I quote, a person who receives compensation under this chapter may not bring any action involving the same subject matter. Mr. Brown brought this case in June of 2017. At the time he filed his lawsuit, he had not received Tim Cole Act compensation. He had no idea he was going to receive Tim Cole Act compensation. And in fact, he was not even qualified to receive it. It wasn't until about a year into the litigation in this case that because of evidence uncovered during discovery, the district attorney of Harris County decided to re-evaluate Mr. Brown's claim of actual innocence. She did that. She declared him actually innocent. And only at that point did he become eligible for Tim Cole Act funds. He received those funds in December of 2020, about three and a half years after this lawsuit was filed. This lawsuit had been, the 1983 lawsuit had been stayed, is that right? Yes, your honor. It had been stayed pending the investigation of the Tim Cole Act. I'm sorry, not the Tim Cole Act. It had been stayed pending investigation of actual innocence at the request of the county. Right, because he had, as I understand it, he had brought an application for Tim Cole Act compensation previously, but it was denied by the commissioner, whoever it is. That's correct, your honor, because at the time he didn't qualify for the Tim Cole Act compensation because he had not been declared actually innocent. So it wasn't until he was declared actually innocent that he could receive those funds in the first place. So in order to, essentially in order to get that declaration that he needed to go get Tim Cole Act funds, he had no choice but to file this lawsuit. The text of the Tim Cole Act is plain and unambiguous, and when applied to this case, it does not preclude Mr. Brown's previously filed 1983 claims. There isn't an argument here by anyone that the text is ambiguous. I'm still, my thoughts are slow catching up to what you're saying, but you said he had to file this action in order to pursue his Tim Cole Act claim. Well, just factually, your honor, this, the investigation by Harris, by the Harris County District Attorney was prompted by evidence that was uncovered in this action. He had been consistently denied an investigation into his actual innocence prior to the filing of this action. He had consistently denied Tim Cole Act compensation prior to the filing of this action. So it wasn't necessary, it's not generally necessary for a litigant to file a 1983 action because many litigants are declared actually innocent before they're even released from jail. And that's the, I think that's the ordinary course, I would say. So this is a very sort of and was not declared actually innocent until about four years after his release from prison, if that makes sense. Yeah, my question though was, did you say that he needed to file this action in order to pursue his claim under the Tim Cole Act? Is that what you're talking? Yes, yes, your honor, I am telling you that because factually speaking, he didn't have the in this action. So discovery in this action was necessary to get him to that declaration of actual innocence. Well, is what you're saying in a nutshell that the difference between bring and maintain? Yes, your honor. Bring an action means to file suit. Yes, yes, your honor. And I think that's been very consistently held by Texas courts. But the district court didn't make that distinction, right? No, your honor. And I think part of that is we had a very fair and good district court judge, but we didn't really emphasize this point. And I think she didn't have benefit of the more exhaustive briefing that this court has. So she didn't really examine in her opinion the plain language of the statute. So the plain language of the statute as written is that a litigant cannot bring an action after they've already received Tim Cole Act compensation, which means to file suit. Under the defendant's definition, which would be to extend it to bring and maintain, that requires this court to rewrite the statute and basically requires the insertion of additional words into the statute. You're reading the statute as if it is not concerned about duplicative recovery. That is correct, your honor. And in fact, in State v. Oakley, the Texas Supreme Court specifically said, and I quote, the statute does not purport to bar duplicative recoveries. Had that been the aim, the legislators could have said simply that no one can recover both. Now, I acknowledge that you're right about that. You're right about that. Oakley was addressing the Tim Cole Act in a different sort of incarnation, I suppose. There was, at that time, the 2001 Act allowed for either a lawsuit, a civil action against the state for which the state had sovereign immunity, or an administrative action. There were two separate subchapters, I believe. Is that right? Yes. And your honor, it was looking too specifically at more of that, a person who receives compensation piece to determine whether compensation could be received after a 1983 settlement had been received from the municipalities. And it determined that it could. It said specifically that the provision plainly prohibits those who receive compensation from then suing local government entities or employees, but not the other way around. Yeah. So, I think it's 2009 the statute is changed. Is that right? The Tim Cole Act? Yes, your honor. It is, and I believe that's correct. Right. And I guess what I'm getting at is that the statute undergoes a change after Oakley, and yet this language is left, the 153B language is left in there. It's almost as if we're addressing a different world after the change in the Act. And in that different world, we have the Brown case from the Texas Supreme Court, this case, I guess, the Mandamus action. And then, in a footnote in that case, and I guess, I don't recall, but I think the district court might have relied on this in some part. The Supreme Court of Texas says the administrative remedy under the Tim Cole Act works to the exclusion of any other action involving the same subject matter. I mean, that sounds like it cuts against your argument. So, I guess, what's your response to that? Well, your honor, I would say a couple of things. First of all, I don't think that footnote is incorrect, except that it doesn't examine the word, it doesn't even use the word, the words may not bring any action. It certainly doesn't examine them. Well, what it's doing, right after that, it quotes the rest of the statute involving the same subject matter, including an action involving the person's arrest, conviction, length of confinement. My point is, the Texas Supreme Court seems to be talking about this subsection in terms of avoiding duplicative recoveries. And I don't understand why it would describe the act that way. Well, your honor, respectfully, I think it's, I think it is, it's sort of summary in nature. It wasn't really looking at this issue. It certainly wasn't briefed. It certainly wasn't argued. Fair enough. You're saying it's, maybe it's dicta, doesn't really. At most, yes. And I would also, and I would also submit that the Texas Supreme Court had the benefit of, I mean, the Texas state legislature had the benefit of Oakley and didn't change the statute. So had they wanted to do that, they could have. And they, they chose not to. The interpretation or the, the, the interpretation offered by the defendants that bring should mean bring or maintain, it, it, it, it's a rewrite of, it's a rewrite of the statute. But just, just to be clear though, I mean, if you, if you receive compensation under the Tim Cole Act and then the very next day after receiving the compensation, you bring the same 1983 action that you have brought in this case, it's barred, right? Because the sequence is different. That's correct, your honor. Okay. Why isn't that, and acknowledging what Oakley said about sequencing, why isn't it, why isn't that absurd? It's not absurd. Well, first of all, the level, the, the, the, um, bar for absurdity is extraordinarily high and mere oddity is not absurdity. Okay. So I bring the 1983 action the day before I receive compensation. I can continue with it and get all the same damages. But if I receive compensation and bring the 1983 action one day later, I am barred from doing that under the statute. Why would a such a statute, why would that result make any sense at all? Well, your honor, I think the very question, why would the result make sense is, um, uh, is not the question the court is here for. Oh, I know, but I decided to ask it. So what's the answer? Um, the, the, um, the result is, is not absurd because there are many reasons that the state, the state legislature could have written it this way. And, um, you know, it could have determined, for example, that, um, and it could have believed that a litigant who files Tim Cole Act compensation had the opportunity to file a 1983 action at the same time and, and could, uh, and may or may not determine to do that because actual innocence is not the same as the standard under 1983. Why isn't, uh, part of your answer to Judge Duncan's, uh, question is that the legislature used those words and we don't go beyond that. That's exactly what I was, uh. Wanting to answer, um, which is that in, in, in Texas, that, that, that oddity, um, that, that sort of odd result, it may seem odd to this court, but it's not the court's, uh, purview to rewrite the statute. Well, and the fact is what you told me, if he hadn't brought this 1983 action, he wouldn't have got the actual innocence determination that resulted in his receiving the pay under the Tim Cole Act. That's what you told me earlier. That's exactly. This time you're going to, you're going to say you told me. That's exactly right. We had to do it. Right. And so this case itself is, I think, um, an indication of why the statute might look this way and why, um, you know, why it's a fair result. Um, it, you know, we can work in hypotheticals and it might not feel like the right result, but for this case, it is, it is the right result. Um, and, and he may be the only one that falls into this gap. Alternative of certifying this to the Texas Supreme Court. That is something that this court could decide to do. Um, I mean, I would, I would argue that it's not necessary. I think the language is so clear. I think it's crystal clear and it's not a particularly complex question and there hasn't been a single case cited or, um, basis for the argument that bring should be mean bring and maintain. And so I don't think it's necessary in this case, but it's certainly something that you could do. And what's unspoken is you don't need to do it. You need to just rule for me. But if you're going to rule against me, then maybe do that. I know you're not going to adopt those, those words, but that's kind of what the thinking is when the court asks you about certifying questions. Well, I do. Yes. And I do think that the, the, the plain language of the statute says bring means to file a lawsuit. And so a person who, um, receives compensation after the filing of a lawsuit, uh, does not have there. Maintain means do not dismiss the preexisting laws. Right. And the Texas state legislature could have said maintain. It could have said a number of different things that would have covered this particular suit. It didn't say any of them. And, um, and I think I haven't seen a case and I don't think defendants cite a single case that says bring means bring or maintain. They simply argue that that's what the court should do. But, you know, I think that begs the question, does the court want an opinion out there that says bring means something other than bring. And now under the, under the, I, I, I, you, obviously know the administrative side of this much better than me. When, when you make an application, if that's the right word for a Tim Kolak compensation, you do that with a, who do you do that with? The Texas state comptroller. The state, the Texas state comptroller. And, and so you've made an application, but in, in your view, that doesn't, that's, you haven't received compensation at that point, obviously. So then at some point the comptroller makes a positive or negative decision on that. Do you receive compensation then, or is there a further lag after? When, I'm just getting it, if, when do you receive compensation? Well, I believe that's a, I, I, I believe that's a slightly different textual question, but, and, and, and not something I've looked at particularly closely. Yeah, I'm just asking as a practical matter. But, but to answer your question, I think, I think you receive compensation when you have the check in hand. And I, and that's what State v. Oakley says, that, that, that a litigant who may be entitled to funds in the future is not the same as a person who has received compensation. And so I do think that, that question is addressed in Oakley. Okay. Yes. Thank you. And, and I would like to just quote Texas, Texas Health, which says that the legislature may sometimes mistakenly enact language that, though unambiguous, does not accurately reflect its collective intent. And our duty is to fairly construe and apply the language enacted and leave it to the legislature to correct its own errors or omissions. Thank you. All right. Thank you, counsel. Appellee. Good morning, and may it please the court. My name is Christy Martin, and I represent the City of Houston and the officer defendants McDaniel, Robertson, and Lloyd. I think the important thing to remember here is that this court's duty is to go back to the eerie guess. What is the Texas Supreme Court, what would they do with this statutory interpretation? It's not to start from scratch. Judge Rosenthal, in writing her opinion, made it very clear that she saw that as her duty, and she did not err in doing so when she predicted that the Texas Supreme Court would likely hold that Mr. Brown's 1983 claims are barred, even though he filed the judge Duncan's comment. The critical factor here is that footnote in Mr. Brown's own mandamus proceeding that the Tim Cole Act's exclusionary language works to the exclusion of any other action involving the same subject matter, any other action. That doesn't limit it to actions brought the day before the suit. That doesn't restrain itself to 1983 claims brought three years before receipt of compensation. It works to the exclusion of any other action, and this— It just doesn't say that. Excuse me? I said it just doesn't say that. It doesn't say what you're saying now. That's right. But that's—so, bring any action refers to actions brought before you received Tim Cole Act? Could be either way. Compensation? The best thing we know from the Texas Supreme Court is that they construe bring any action very broadly as any other action. Any other— It wouldn't necessarily have to be construing bring to mean maintain. I think maybe not necessarily. It could be bring or maintain or, you know, conclude, continue. There are a whole bunch of words that are— That we can read into it. Sure. Sure. Because that's what the Texas Supreme Court did, and that's our job here. We are trying to predict what the Texas Supreme Court would do. Is it your position that the language is ambiguous, then? No, it is not our—no, it is not. You don't think it's—you think it's unambiguous in your favor. Yes. The other side thinks it's unambiguous in their favor. Yes. Isn't that an indication it might be ambiguous? Potentially. I agree with you, but I would also— Ambiguous answer. I would also— Better hope it's ambiguous. I would like to join Judge Graves' statement that to the extent the court is inclined to certify, please only certify if you are inclined against the city of Houston. Well, I mean, so bring—I mean, so bring can mean file. I bring an action. That means yesterday—I brought an action yesterday. That means I filed it yesterday. Yes. If I have a lawsuit that I filed last year and somebody says, did you file a lawsuit or do you have an action? And you say, yeah, I'm bringing an action against such and such. I don't know. I just don't know if the word—I don't know how— How about the word brought instead of bringing? Yes. How about the word brought instead of bringing? How about the word continuing instead of maintaining? How about—and that's where the Texas Supreme Court came down in its fractured Jaster opinion. All of these words have so many different meanings, and you can't just look to a dictionary, which Justice Willett in his concurrence or dissent called a museum of words. We're talking about a museum of words when you look at Black's law dictionary, calling bring an action to mean initiating suit. I hear all that. I'm just remembering my daddy saying, bring me a glass of water, and I didn't get a credit for the glass of water I brought last week. He meant bring me a glass of water right now in the moment. That's what bring means. Sure. And I hear you on that. The other thing to keep in mind is that when you bring a suit, you bring witnesses. You call witnesses. It is—you do things in litigation— Subsequent to bringing it. When you bring it subsequent to bringing it? No, when you bring this suit, then calling witnesses is subsequent to the bringing, meaning filing. I do hear you on that, but there are many stages of a lawsuit. There are many things you bring in a lawsuit, and you can bring an action. For example, let's say you file a negligence claim, and then you turn around and you bring a gross negligence claim. You are bringing another cause of action in the suit that you already brought. This is the problem. So I guess another way to look at this is we're focusing on this one word, bring any action, or one phrase, bring any action. The sentence is a person who receives compensation under this chapter may not bring any action. So receives compensation is also in the present tense. Is it stating just like a—is it stating a categorical proposition? Look, if you get money under Tim Kolak, you're not going to get the same money from some other cause of action. And I think I agree with you except to the— Because that's what the footnote in Brown says, but counsel opposite says, I think, you know, plausibly, well, the Texas Supreme Court wasn't really thinking about a situation like this, and it was just generally describing the act. I agree, but we need to keep in mind that when the language in Tim Kole bars the suit against different entities, right, the recovery that he got is from the state of Texas, and the language bars any other action against other governmental units, including the city of Houston, and governmental employees like the individual officer. What do you do with that language that counsel correctly, I think, I'd be relying on that language in Oakley then, that says sequencing is important. Yes. What do you do with that? I think that that language in Oakley is probably narrowly construed, properly narrowly construed, to mean that before you get the cash in hand, the bar doesn't apply. That's the narrowest construction of Oakley, and I think that's proper, and I think that's what Judge Rosenthal did when she looked at Oakley. And when she also looked at the other— Meaning, when you get the cash in hand, then the bar applies to your lawsuit that was already filed? Yes, and she at both the Oakley court and Judge Rosenthal construed this as a conditional immunity. Once the money is paid, the conditional immunity enacts, and so then we're done with whatever lawsuits might be filed against individual officers or cities or counties. And I think the important thing to remember is what would be the causes of action that would be pending against local governmental entities involving wrongful arrest, wrongful conviction. Those would be 1983 claims. Does the Tim Cole Act only pay if there's a determination of actual innocence? There are multiple criteria that you can qualify for. The whole point, and historically, the whole point has been to protect those who are innocent and wrongfully convicted, and the legislature has tinkered with the language a little bit over the years and has a couple different criteria, but yes, the whole point is for people who are innocent and wrongfully convicted, this is something that the state has voluntarily, through constitutional amendment, decided to do for its citizens who it wrongfully convicts. So does there have to be a determination of actual innocence? Well, in some proceeding, yes. That's why Mr. Brown's... Would the comptroller make that determination? No. That's what Brown's mandamus determined. All that they can do is check the boxes. So who makes the determination? It could be either by the DA who decides not to prosecute. It could be, in this case, there was a dismissal in the district court saying, you know, finding actual innocence. Perhaps had the Texas Court of Criminal Appeals, when it considered the petition for rid of mandamus in Mr. Brown's case, had that been in there? It just needs to be a finding in one of a couple statutory categories. The comptroller looks at it and just checks the boxes. I'm almost out of time, but I do want to say that Judge Rosenthal's opinion is well-reasoned, and we would request that the court affirm the judgment. Thank you. Mr. Hopkins. Good morning. May it please the court, I'm Seth Hopkins representing Harris County. Litigants make choices every day about where to file suit, whether to seek a jury or bench trial, and whether and for how much to settle. By accepting approximately $2 million in cash benefits, Alfred Brown chose to enter into a statutory settlement with the state of Texas, its political subdivision. Where is it in the record that he got $2 million? So it's $980,000 in cash and $980,000 under the statute in an annuity. Plus, it's the opportunity for health care benefits and the opportunity for college tuition. So he entered into this settlement, statutory settlement, with not only Texas, but its political subdivisions and its employees. So the trial court properly recognized that the Texas Supreme Court's ruling in State v. Oakley gave Mr. Brown a choice between two remedies and not two remedies. Once Mr. Brown accepted Tim Kolak money, he was barred from, and the quote is, bringing any action involving the same subject matter as his arrest, conviction, or length of confinement. And Mr. Brown seems to concede on pages 25 to 30 of his brief that the statute would have barred his 1983 claim if he had been paid before he filed his lawsuit, but not after. In other words, what he's arguing is that the state has only chosen to settle claims that have not been filed and has chosen not to settle claims that have actually been filed. Well, isn't that the problem with the legislature? Well, I don't think— They chose the words. I don't think any—I don't think the Texas Supreme Court or any court would adopt that absurd construction, and there are a couple of reasons why. First of all, we look to Brown's own mandamus opinion, and it's very significant that the court said—the court was aware of this federal lawsuit. Mr. Brown had explained on page 2351 of the record, you'll see an appendix that Mr. Brown attached to the mandamus where he gave the case and citation of this federal lawsuit. So we know the Texas Supreme Court was aware that this suit was pending when it sui sponte said that if receiving Tim Kohl Act money, quote, works to the exclusion of any other action, and that once accepted, quote, the legislature has spared governmental units, governmental employees, and the wrongfully imprisoned the uncertainty and expense of litigation. The Supreme Court made that ruling knowing about this case. And while Mr. Brown criticizes that this was appeared in a footnote, he also acknowledges that that's not surprising because that wasn't the issue in front of the Supreme Court. What matters is that the Supreme Court, knowing about this case, decided on its own to make that explanation. The Supreme Court also stated in State versus Oakley that local governments have immunity, quote, once the state has paid a Chapter 103 claim, and, quote, so construed, the statute protects local entities from having to add to the settlement by the state. I think, Judge Duncan, you mentioned about the sequence. Mr. Brown is correct. Sequence matters. But what's important in that case is that the city of Austin voluntarily paid Mr. Oakley before the state paid him, and the state wanted to relinquish its administerial duties to follow the Tim Kohl Act, and they wanted to claim that the city had settled on behalf of the state. What the Supreme Court said is it doesn't work that way. The state settles for local government, but local government never settles for the state. That was the point of Oakley. So under this backdrop— Because when Oakley is talking about sequence, what sequence is it talking about? I know you just said that, but I want to get that clear in my mind. It's who settles first. Settling— Yes, Your Honor. —versus receiving compensation under the Tim Kohl Act. Here we're talking about, counsel on the other side wants to say that sequence means when you file the lawsuit versus when you receive Tim Kohl Act compensation. That's not what Oakley was about, though. Okay, right. Oakley's different. Okay. Under this backdrop, Mr. Brown focuses on the word bring and defines an action to be the initiation of a new lawsuit. But the legislature didn't say, quote, Mr. Brown couldn't bring any lawsuit. It said more broadly, Mr. Brown couldn't bring any action. In Jaster v. Comet 2, the Texas Supreme Court recognized that some legal terms and two of the examples of action and proceeding are broadly construed and interchangeable. The majority also held, quote, we must consider the context in which those words appear and the statute as a whole. And you see that consistently in all of Mr. Brown's cases, where the Supreme Court says we don't look at one part of a statute in isolation. The context is extremely important, cases like Texas-Presbyterian, cases like Jaster. So Mr. Brown's 1983 case, it's important to realize, has not gone to trial, and the burden rests with him. If this case is reopened, he will have to bring witnesses, evidence, and testimony in proceedings and actions before the district court. The Tim Kohl Act makes clear he cannot bring any, emphasis on the word any, action related to his wrongful conviction. A lot of the discussion here in oral argument has been over the word, not the word action or any, but bring, meaning that it suggests that there is a sequence, receives compensation, then you may not file a lawsuit, but here the lawsuit has been filed. I mean, you know what's going on. So what can you add to that debate? You can't look at bring in isolation. It's bring any action. And if an action is a proceeding, if an action is defined broadly, then bring any action means he can't show back up in federal court and meet his burden. He's not bringing the action. He's already brought. If we define an action as a proceeding, as the Texas Supreme Court does in the Comet case, then he would be. He would be bringing his proceeding. He would be bringing his burden of proof. He would be trying to meet that burden of trial. And there's also another very important case, United States Supreme Court case that Mr. Brown cited on pages 28, 29 of his brief. It's Brewer v. Jim's Concrete, held that despite Black's Law dictionary definition, and the quote is, maintain in reference to a legal action is often read as to bring or to file. That's at 538 U.S. at 695. Why doesn't that go against you? Well, what the Supreme Court's saying is that the words can be used interchangeably. If bring and maintain are used interchangeably in the legal context, then that would mean that maintaining, that's sort of another argument that we have, that maintaining an action would be the same thing as the Supreme Court has defined those two as interchangeable. So this is all consistent. So your view then is bring any action is ambiguous. Is that right? I think that the way we interpret it in the context of the statute, it's not. But if you interpret it the way Mr. Brown interprets it, it is ambiguous. And then you have to go to the Statute Construction Act, and you look at the rest of the statute. Why isn't that just the opposite of what you responded to Judge Duncan's question? Well, I'm sorry? I think it's just the opposite of your definition. Well, if in the context of the statute, in the context of what we see in Oakley, in the context of what we see in Enri Brown, I think that the statute has to be interpreted in the way that we've interpreted it. But, you know, our worst case scenario is that you would find the statute to be ambiguous, and you definitely would look at the context and would reach the same conclusion. So there's one other thing that's very important to point out, is that Mr. Brown has consistently given us dictionary definitions in case law, but his dictionary definitions in case law don't define bring any action, they all define bring unaction in the context of other statutes. But the Tim Cole Act is more broad, and we have to assume the legislature used the word any for a reason. Finally, while statute headings don't have the force of law, they are evidence of legislative intent, and they supply the context that the Texas Supreme Court and the United States Supreme Court say that we have to have. Right above the phrase may not bring any action is the heading, employees not liable after payment of compensation. It doesn't say not liable if a lawsuit hasn't been filed, it provides full immunity once payment is made. That's the context that we're required to look at in the Tim Cole Act. The Texas Supreme Court has twice explained now, in both the Oakley and the Brown case, that the Tim Cole Act immunizes local government, yet Mr. Brown asked this court to encourage exonerees to sue local government before accepting money under the Tim Cole Act. Immunity for local government isn't supposed to encourage litigation against local government. That would be an absurd result. Further, subjecting local governments, particularly small counties with limited resources, to this litigation, going against the intent of the Texas legislature, risks diverting crucial resources from cold cases to defending lawsuits. But when he brought this action, he had been denied compensation under the Tim Cole Act. He had been denied because the district attorney had not granted compensation. Whatever the reason, he's been denied under the Tim Cole Act. Because he didn't meet his prerequisites. He had been denied under the Tim Cole Act. That's correct. Yes, Your Honor. So he didn't have any alternative, did he? Oh, no. For pursuing a claim? Well, the district attorney at any point could have declared him actually innocent. He didn't have to. There was no relationship between filing this lawsuit and being declared actually innocent. They're two completely separate processes. So he didn't have to bring the lawsuit? I'm sorry? He didn't have to bring the lawsuit? He didn't have to bring the lawsuit. That's correct. He would have been doing nothing except waiting on a D.A. to do something, right? Well, and asking the D.A. That's correct. Asking the district attorney to make the declaration of actual innocence. And that's what, a letter? You send a monotone e-mail and say, please declare me actually innocent, and then you wait? That's correct. I mean, that's one avenue. Powerful action. In the meantime, the one-year statute of limitations runs. Well, no, once you're declared actually innocent, there's no statute of limitations. Then you've got three years to apply for your money, as I understand it. So he could be declared actually innocent at any point. At any point. Year, two, three, just wait it out. All right. There's no statute of limitations. All right. Thank you, Your Honors. Thank you. Rebuttal. Thank you, Your Honors. Starting where you left off with Mr. Hopkins, the statute of limitations was about to run on Mr. Brown's claim. When he filed it, he was running right up against the period of time that he had to file it. In fact, there was a statute of limitations challenge in this case that was unsuccessful. What statute of limitations are you talking about? The statute of limitations for the 1983 claim. Okay. Yeah. I thought we were just talking about whether there was a statute of limitations on Tim Kohl Act compensation. There is a statute of limitations for the Tim Kohl Act after you've been declared actually innocent. But I believe what Mr. Hopkins was saying is there's no statute of limitations on the ability to be declared actually innocent. And that might be true on a theoretical level, but I think as a practical matter, the issue here is that Mr. Brown had repeatedly implored the district attorney, multiple district attorneys, to reevaluate his claim of actual innocence, which he had maintained since he first went to prison. And that was not ever done. And he had to file this case or the statute would have run on it. If you are successful and he can maintain that act, will he have to give credit for his Tim Kohl receipts? I think that's a good question, Your Honor. I think that would ordinarily be how a court would handle the receipt of funds from two different defendants, but I don't know the answer to that because that hasn't been briefed. And I think that would be up to the trial court. I just want to clarify a couple of things. One, Mr. Hopkins repeatedly said, you know, that context is important and we have to look at the context, but I did not hear a reason why the context of the Tim Kohl Act should alter this court's reading of the plain language. And I think that while the Oakley case is instructive and the sequencing may, it may have been about the receipt of money, but it also may have been about the order in which you sue. Well, was it or was it not? I mean, when the court says sequence is important, that's pretty important language. I agree. Which means when you settle. I believe that it addresses when the lawsuit is filed versus the receipt of funds under the Tim Kohl Act. And the reason for that is that there's other language in Oakley that indicates that. They say, and I quote, this provision plainly prohibits those who receive compensation from the state from then suing local government entities or employees. And I think that's sort of the critical language as to the question in front of this court. There is no Texas, there's no Texas Supreme Court cases that can, that construe bring any action very broadly. That, that's just inaccurate. And I would also just note that, that we also don't look at the headings when, when looking at cases and, and construing the plain language of those cases. There are so many different ways that the Texas State Legislature could have addressed this, this issue, and it didn't. If you were to rewrite the statute and, and, and apply it the way that the defendants would like it to be applied, I think you run headlong into the constitutional issue. I don't think you have to reach that issue here. You have the opportunity for constitutional avoidance. And for all of these reasons, unless there are more questions from the court on the substance, I would ask that you reverse and remand for further proceedings. All right. Thank you, counsel. Court will take this matter under advisement. We are adjourned until nine o'clock tomorrow morning.